Keybro Enterprises, Appellant, *v.* Four Seasons Country Club Caterers, Inc., et al., Respondents.

First Department, April 28, 1966.

*Julius Lentz* for appellant.

*Herbert W. Solomon* of counsel (*Silverstein, Balin, Pares & Soloway,* attorneys), for Four Seasons Country Club Caterers, Inc., respondent.

*George Knopp* for Jack Dubov Associates, Inc., respondent.

Stevens, J. Plaintiff appeals from an order entered February 16, 1965, and judgment entered April 9, 1965, which granted defendants' motions for summary judgment dismissing the complaint.

The action was brought for accrued interest allegedly due on a series of 12 promissory notes, and to recover a sum as an attorney's fee. The notes were made to the order of Seymour Hirschhorn by Four Seasons Country Club Caterers, Inc. (Four Seasons) as payment for services rendered the corporation.

Larry Dubov, an individual defendant and also an officer of Jack Dubov Associates, Inc. (Associates) alleges in an affidavit that the notes were indorsed to Associates in the same form as delivered to plaintiff, by Seymour Hirschhorn, May 2, 1962, and when purchased by plaintiff were in same form as when received from Hirschhorn.

The notes were executed May 1, 1961, in the amount of $1,000 each, the first becoming due May 1, 1963, and monthly thereafter until June 1, 1964. Four Seasons asserts when the notes were executed and delivered each, by its terms, was payable without interest; that the provision for interest appearing on the face of four of the notes was added subsequent to delivery. Eight of the notes bore no such notation for interest.

On or about May 2, 1962, the defendants, excluding Four Seasons, executed an instrument of guarantee. In the initial paragraph thereof it is stated ''for the purpose of inducing Keybro * * * to purchase a series of twelve promissory notes dated May 1, 1961 * * * each in the sum of $1,000 with interest ''. Associates warranted the notes were valid and subsisting notes issued for value, the prior indorsements genuine, and that at least two thirds of Associates' stockholders consented to the sale of the notes. In the instrument the defendants, excluding Four Seasons, then undertook to unconditionally guarantee jointly and severally, payment of the notes ''in accordance with the terms thereof, when due '', and to pay a reasonable attorney's fee should legal action be necessary for recovery on the obligation.

When the first note became due, it was presented to Four Seasons' bank for payment. Four Seasons refused to pay interest and notified plaintiff that when the notes were executed by it and delivered the notes did not contain any provision for the payment of interest; that they were altered thereafter. Only four of the notes contain an interest provision, eight bear no such notation. All of the notes were paid as presented, each in the amount of $1,000, but without interest.

Thereafter plaintiff instituted this action against Four Seasons as maker and the other defendants as guarantors to recover the sum of $1,858.80 as accrued interest allegedly due on the notes, and the sum of $619 as a reasonable attorney's fee.

Four Seasons in addition to denials pleaded as affirmative defenses alteration of the notes after delivery without its knowledge or consent, waiver, and accord and satisfaction. The other defendants interposed general denials in their answer.

Subsequently Four Seasons moved for summary judgment pursuant to CPLR 3212, and in support of its application sub-

mitted affidavits by its vice-president Swartz and treasurer Fromer, whose signatures appear on the notes, and also one by their attorney. Swartz and Fromer swear that when delivered the notes were payable without interest. Four were altered thereafter to include interest, eight were not so altered. Solomon, attorney for Four Seasons, refers to that situation in his affidavit and, additionally, asserts waiver and accord and satisfaction. In a later affidavit Solomon points out in answer to plaintiff's affidavits in opposition to the motion wherein it refers to the agreement of guarantee of May 2, 1962, that Four Seasons was not a party to the agreement.

The other defendants who had sold the notes to plaintiff for $8,000, also moved for judgment pursuant to CPLR 3212, and recited they did so upon all affidavits and exhibits submitted by Four Seasons and upon the affidavit of defendant Larry Dubov. Dubov's affidavit incorporated by reference as a part thereof, the affidavits of Swartz, Fromer and Solomon, and the exhibits and other papers upon which Four Seasons based its motion. Plaintiff requested that both motions be read and considered together.

The single question then is whether payment of the notes discharged the maker and the guarantors on the note, or whether, as to the guarantors, liability continued by reason of the agreement.

It should be noted the notes were paid and surrender thereof made prior to the enactment of the Uniform Commercial Code which became effective September 27, 1964. The Negotiable Instruments Law (NIL) was then in effect and is here applicable. Section 200 of the NIL provides, insofar as pertinent: " A negotiable instrument is discharged: 1 By payment in due course by or on behalf of the principal debtor;" and " 5 When the principal debtor becomes the holder of the instrument at or after maturity in his own right." The notes were paid and delivered up to Four Seasons which now holds the same. Clearly Four Seasons as maker is discharged (*Gerard* v. *Bank of New York & Trust Co.*, 265 N. Y. 336, rearg. den. 266 N. Y. 544; *Larkin* v. *Hardenbrook*, 90 N. Y. 333).

Section 201 of the NIL provides that persons secondarily liable on the instrument are discharged " 1 By an act which discharges the instrument;" or " 5 By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved ". (See, also, 42 N. Y. Jur., Negotiable Instruments, § 607.) The defendants as guar-

antors undertook only to pay the notes " in accordance with the terms thereof, when due." The motion for summary judgment was pursuant to CPLR 3212, which permits support thereof " by affidavit, by a copy of the pleadings and by other available proof " and declares the " motion shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party."

A unilateral reservation of rights by a promisee against the guarantor or surety is of no avail where the obligation is discharged absolutely by such a surrender because the guarantor or surety would be deprived of his rights to subrogation (*Spies* v. *National City Bank,* 174 N. Y. 222, 226, 228–230; *Farmers' Bank of Amsterdam* v. *Blair,* 44 Barb. 641; *Meyn* v. *Schutte,* 20 Misc 2d 471, 473; Reserving Rights Against Surety, Ann. 139 A. L. R. 85, 108–116 and cases cited; 50 Am. Jur., Suretyship, § 129, p. 990; Note, The Effect Upon the Surety of a Reservation Clause in a Release of the Principal Debtor, 50 Yale L. J. 1485, 1487–1490).

A surety agreement might readily enough be converted into a subsisting separate and independent agreement between the promisee and original guarantor, notwithstanding the discharge of the principal underlying obligation. But this would have to to be done by a valid contract embodying a new and independent consideration beneficial to the guarantor or set forth in a writing enforcible under the Statute of Frauds (General Obligations Law, § 5-701, subd. 2; *White* v. *Rintoul,* 108 N. Y. 222; *Bulkley* v. *Shaw,* 289 N. Y. 133; *Newton* v. *Van Ingen,* 21 A D 2d 425, affd. 16 N. Y. 2d 596; *Kahn* v. *Naitove,* 171 Misc. 504 [CONWAY, J.]).

Of course, where a statute specifically allows interest, the interest may be considered a part of the claim (*Matter of Crane* v. *Craig,* 230 N. Y. 452). Or, where interest is provided for in the contract, " the payment of the principal debt will not defeat the right to recover accrued interest by a subsequent suit " (47 C. J. S., Interest, § 71, subd. b). A check of the cases cited in the footnote indicates the application of the principle in New York chiefly in connection with the moratory statutes or matter involving realty. (Civ. Prac. Act, art. 65, §§ 1077–1080; see *White* v. *Wielandt,* 259 App. Div. 676, affd. 286 N. Y. 609; *Central Hanover Bank & Trust Co.* v. *Roslyn Estates,* 266 App. Div. 244.) " The rule, however, appears to be that where the interest is not payable by the terms of the contract, but is simply allowable as damages for the default in payment, then the inter-

est is not regarded as part of the debt, but as a mere incident to it, and the receipt of the principal bars a subsequent claim for the interest for the reason that in such cases interest being a mere incident, cannot exist without the debt, and the debt being extinguished the interest must necessarily be extinguished also [citation]. But where interest is specifically reserved *by the instrument* and forms an integral part of the debt, the rule is different for then the acceptance of the principal without the interest does not extinguish the debt, and the mere acceptance of part, either of principal or interest, does not bar a subsequent claim for the whole, whether with or without protest, for the payment of part is not generally a satisfaction of the whole unless there is an agreement of some kind that the payment made shall be a satisfaction of the whole." (*Matter of Crane* v. *Craig,* 230 N. Y. 452, 461.) See, also, *Davison* v. *Klaess* (280 N. Y. 252) where acceptance of a bill on the terms stated, which terms included interest, created an implied contract to pay interest.

Accepting plaintiff's account of events, it nevertheless appears that neither of these requirements was met. A promisee's agreement to forbear from suing the principal obligor is not, by itself, a sufficient new consideration to take the case out of the Statute of Frauds (*White* v. *Rintoul, supra*; *Newton* v. *Van Ingen, supra*; *Atlantic Macaroni Co.* v. *Schiaffino,* 252 N. Y. 547, affg. 225 App. Div. 685).

The agreement here was separate and apart from the notes, only four of which provided for interest. As to those four the claim of alteration subsequent to execution and without the consent of the maker is not disputed. At most, the agreement was a guarantee to pay according to the terms of the notes, no more. Any agreement to forbear suit for the interest was an agreement to abstain from doing what could not be done effectively anyway. Such agreement represented no consideration for the sureties' alleged promise to pay the interest themselves (Restatement, Contracts, § 76, subd. [b]; § 78). Even if a past consideration is attempted to be extruded from the facts it will fail also to support an enforcible agreement for a lack of writing expressing both the past consideration and the new promise (General Obligations Law, § 5-1105). Acceptance of payment and delivery of the notes extinguished the obligation both of the maker and the guarantors. There was no such reservation by the instruments as a part of the transaction as would make the guarantors liable, nor was there a separate, valid contract of the type previously mentioned. Accordingly, plaintiff cannot prevail on the present complaint under any view of the facts.

The order and judgment appealed from should be affirmed, with costs and disbursements to respondents.

EAGER, J. (dissenting in part). I concur in the affirmance of the judgment in favor of defendant Four Seasons Country Club Caterers, Inc. (Four Seasons), but I would reverse the order and the judgment appealed from insofar as they provide for the dismissal of the complaint as against the individual defendants Dubov and the corporation Jack Dubov Associates, Inc. (herein referred to as defendants Dubov), and deny the cross motion by them for summary judgment.

The written instrument of guarantee signed by said defendants is in form an absolute and unconditional guarantee of payment of the notes. It recites that the notes were "each in the sum of $1,000.00 with interest", and certain of the notes on their face do purport to bear interest at 6%. These particular defendants do not plead affirmatively an unauthorized alteration of the notes. Furthermore, the answering affidavit of the plaintiff expressly alleges that the defendants Dubov represented and agreed that the notes all bore interest; and that it was agreed between the plaintiff and the defendants Dubov that the plaintiff should collect the principal owed on the notes from the maker, Four Seasons, and then, after all the notes were paid, if it would not pay the interest, the defendants Dubov would pay the same in accordance with their agreement.

It is well settled that "Where interest is provided for by contract, the payment of the principal debt will not defeat the right to recover accrued interest by a subsequent suit" (47 C. J. S., Interest, § 71, subd. [b]. See, also, 32 N. Y. Jur., Interest and Usury, § 34; Ann. 100 A. L. R. 98). It is true that the surrender of a negotiable note to the maker ordinarily operates to discharge the instrument and bars any further recovery thereon from the maker or from those secondarily liable, including a recovery of unpaid interest. (See Negotiable Instruments Law, §§ 200, 201; Uniform Commercial Note, §§ 3–601, 3–603, 3–604, 3–606; Gerard v. Bank of New York & Trust Co., 265 N. Y. 336; Larkin v. Hardenbrook, 90 N. Y. 333; Schwartzman v. Post, 94 App. Div. 474.) The surrender of the note terminates the life of that instrument but the liability on the independent agreement of guarantee may remain. The plaintiff here, seeking to recover unpaid interest agreed to be paid, pleads and shows a valid independent cause of action against the defendants Dubov on the basis of the separate written agreement of guarantee.

Upon the nonpayment of any portion of the indebtedness owing on the respective notes on maturity, a cause of action accrued against the guarantors separate and distinct from a

cause of action, if any, against the principal debtor; and the guarantors became independently liable for any balance owing on account of principal or interest. So, a complete discharge or release by the creditor of the cause of action against the principal debtor may, but does not necessarily, release the guarantors from liability on the independent cause of action. It is familiar law and well settled that where the guarantor or surety consents to the release of the principal debtor with the agreement, as here alleged, that he (the guarantor or surety) will remain obligated to pay an unpaid portion of the indebtedness, the release of the principal will not operate to discharge the guarantor or surety. Such reservation of the rights of a creditor against the guarantor is fully effective. (See Restatement, Security, § 82, Comment g; § 122; Stearns, Law of Suretyship, § 6.45, p. 182; 24 Am. Jur., Guaranty, §§ 88, 89; 50 Am. Jur., Suretyship, §§ 126, 129; 72 C. J. S., Principal and Surety, § 223, p. 686; Redfield, Law of Commercial Paper, §§ 200–204; *Wright* v. *Storrs,* 6 Bosw. 600, 601; *Frost* v. *Harbert,* 20 Idaho 336. Cf. 42 N. Y. Jur., Negotiable Instruments, § 605; Uniform Commercial Code, § 1–201, subd. [40]; § 3–606, subd. [1]; General Obligations Law, § 15–104.)

This is not the case of a mere unilateral reservation of the rights of a promisee against a guarantor, and, thus, *Spies* v. *National City Bank* (174 N. Y. 222) and other authorities cited in the majority opinion concerning effect of a unilateral reservation are inapplicable. Where, as here, the guarantor or surety consents to the release of the principal debtor, '' he is not discharged, because he has waived his remedies of subrogation and reimbursement and evidenced his intention to remain liable on the debt even though the principal has been discharged.'' (Simpson, Suretyship, § 63, p. 296.)

Furthermore, the plaintiff here is seeking merely to hold the defendants Dubov to the full measure of their liability as assumed by their original written agreement of guarantee. Plaintiff's claim is not grounded upon a new, independent and '' special promise to answer for the debt '' of Four Seasons. Thus, we are not concerned here with subdivision 2 of section 5–701 of the General Obligations Law and decisions cited by the majority alluding to the application of the Statute of Frauds pertinent to such a promise.

A motion for summary judgment is devoted to issue finding and not to deciding of issues of fact. (See *Esteve* v. *Abad,* 271 App. Div. 725, 727; *Kuniholm* v. *Kuniholm,* 15 A D 2d 50, 54.) The '' ' drastic remedy ' of summary judgment should not be granted where there is any doubt as to the existence of ' [factual]

issues'." (*Millerton Agway Co-op.* v. *Briarcliff Farms,* 16 N Y 2d 57, 61.) Here, as to the defendants Dubov, it appears that there are fact issues as to whether or not is was agreed that the notes or some of them would bear interest and whether said defendants independently agreed that their liability to pay such interest was to continue notwithstanding the surrender of the notes.

Finally, it is significant that the defendants Dubov have not affirmatively pleaded the defense of discharge or accord and satisfaction, particularly where, as here, the maker has pleaded the defense. In any event, the failure to plead the defense precludes them from the right to have summary judgment granted on the basis thereof. (See *Planet Constr. Corp.* v. *Board of Educ. of City of N. Y.,* 7 N Y 2d 381; *Moon* v. *Tollefsen Bros.,* 14 A D 2d 520; *Grande* v. *Torello,* 12 A D 2d 937; *Krohn* v. *Steinlauf,* 11 A D 2d 695.)

BREITEL, J. P., and McNALLY, J., concur with STEVENS, J.; EAGER, J., dissents in part in opinion, in which RABIN, J., concurs.

Order and judgment affirmed, with $50 costs to the respondents.